UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LIBERTY MUTUAL FIRE INSURANCE COMPANY            CIVIL ACTION

v.            NO. 19-48

BERNHARD MCC, LLC, ET AL.            SECTION "F"

ORDER AND REASONS

Before the Court are two motions by Reliance Worldwide Corporation: (1) Rule 12(b)(6) motion to dismiss Liberty Mutual's First amended complaint; and (2) Rule 12(b)(6) motion to dismiss Bernhard MCC, LLC's cross-claim; RWC seeks dismissal of some, but not all, of Liberty Mutual's claims and BMCC's cross-claims. For the reasons that follow, the motions are GRANTED.

**Background**

This litigation stems from a water intrusion that damaged the ACE Hotel in New Orleans.

On August 13, 2017, several ACE Hotel rooms and their contents were allegedly damaged when a water pipe fitting ruptured.[1] Liberty Mutual Fire Insurance Company issued a policy of property insurance in favor of the ACE Hotel at 600 Carondelet Street. The

---

[1] This factual summary is drawn from the amended complaint.

1

policy obliges Liberty Mutual to pay proceeds for any losses attributable to water damage.[2] Claiming that certain pipe fittings failed causing the August 13 water intrusion, Liberty Mutual Fire Insurance Company sued, in state court, Reliance Worldwide Corporation (the pipe fitting manufacturer), Bernhard MCC, LLC (the pipe fitting installer and servicer), as well as their insurers, ABC Insurance Company, Inc. and The Travelers Indemnity Company. Liberty Mutual, as subrogee of the ACE Hotel, seeks to recover the proceeds in property damage it paid plus court costs and expert fees.

Reliance Worldwide Corporation (RWC) removed the lawsuit to this Court, invoking the Court's diversity jurisdiction. Bernhard MCC, LLC (BMCC) answered the plaintiff's complaint and filed a crossclaim against RWC, alleging that RWC's plumbing fittings (called Sharkbite Push-fit Connection Systems) were unreasonably dangerous in construction or composition, unreasonably dangerous in design, unreasonably dangerous in the failure to conform to express warranties, and that RWC failed to warn (or insufficiently warned) that the design would (and did) cause damage; all theories of relief arising under the Louisiana Products Liability Act. RWC moved to dismiss the plaintiff's state court petition, and, in

---

[2] The policy provides coverage in favor of Avenue Capital Group, LLC, which owns the ACE Hotel.

response, the plaintiff moved to amend its state court petition. On February 20, 2019, the Court granted RWC's motion to dismiss, dismissing the plaintiff's claims without prejudice, and the Court granted the plaintiff's motion to amend its complaint. RWC now moves to dismiss for failure to state a claim Liberty Mutual's construction or composition defect theory of recovery; RWC also now moves to dismiss for failure to state a claim BMCC's cross-claim alleging as theories of LPLA recovery construction or composition defect and breach of express warranty.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

## II.
### A.

The LPLA provides "the exclusive remedy for products liability suits" under Louisiana law. See Demahy v. Schwarz Pharma, Inc., 702 F.3d 177, 182 (5th Cir. 2012); see also La. R.S. § 9:2800.52 (the LPLA provides "the exclusive theories of liability for manufacturers for damage caused by their products."). To maintain a products liability action under the LPLA, a claimant must establish four elements: the defendant is the manufacturer of

5

the product; the claimant's damage was proximately caused by a characteristic of the product; this characteristic made the product unreasonably dangerous; and the claimant's damage arose from a reasonably anticipated use of the product. Id. § 9:2800.54(A). The characteristic that makes the product unreasonably dangerous must exist at the time the product left control of the manufacturer. Id. And, a product is unreasonably dangerous "if and only if" it is so: 1) in construction or composition; 2) in design; 3) because of an inadequate warning; or 4) because it does not conform to an express warranty. La. R.S. § 9:2800.54(B)(1-4). The LPLA thus limits the plaintiff to these four theories of recovery.

*B.*

1. Defective Construction or Composition

The defective construction/composition provision of the LPLA provides a remedy for harm caused by a product defect "due to a mistake in the manufacturing process." Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir. 2002)(citing La.R.S. § 2800.55). Whether a product deviated from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer is an inquiry distinct from whether a product's

6

defect inheres in its design, such as where all units of the same product model suffer from the same inherent flaw. See Brocato v. DePuy Orotpaedics, Inc., No. 14-2607, 2015 WL 854150, at *3 (E.D. La. Feb. 25, 2015). If pursuing a construction/composition defect theory, the plaintiff must show that, at the time the product left the manufacturer's control, it deviated materially from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. La. R.S. § 9:2800.55. Or, in other words, the plaintiff must show that the particular Sharkbite fitting(s) that failed at the ACE Hotel either did not meet identified performance standards or specifications, or that it deviated from the construction or composition of identical Sharkbite fittings manufactured by RWC (that some manufacturing defect resulted in anomalous composition of the particular Sharkbite fitting used when compared with other Sharkbite fittings manufactured by RWC). By failing to identify the manufacturer's specifications or performance standards for Sharkbite fittings, or failing to indicate how the particular Sharkbite fitting(s) that failed materially deviated from those standards, the plaintiff (or cross-claimant) fails to state a cause of action for defective construction or composition under the LPLA.

2. Defective Design

Under the LPLA, a product's design is unreasonably dangerous if the plaintiff demonstrates that, at the time the product left the manufacturer's control, "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage and that the danger of the damage outweighed the burden on the manufacturer of adopting the alternative design." Watson v. Bayer Healthcare Pharmaceuticals, Inc., No. 13-212, 2013 WL 1558328, at *4 (E.D. La. April 11, 2013)(Feldman, J.)(quoting La. R.S. § 9:2800.56)(citations omitted). The LPLA "does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred." McCarthy v. Danek Medical, Inc., 65 F. Supp. 2d 410, 412 (E.D. La. 1999).

3. Inadequate Warning

"To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." Stahl, 283 F.3d at 265-66; see La. R.S. § 9:2800.57.

4. Breach of Express Warranty

To maintain a breach of express warranty claim under the LPLA, a plaintiff must show: "(1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue." Caboni v. General Motors Corp., 278 F.3d 448, 452 (5th Cir. 2002). An "express warranty" is

> a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents [or] promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance.

La. R.S. § 9:2800.53(6). It does not include a general opinion or general praise. See id. To state a claim for breach of express warranty, the plaintiff must allege what was guaranteed by the warranty and how the express warranty induced the claimant to use the product. See Flagg, 647 Fed.Appx. at 316 n.3 (citations omitted).

*C.*

RWC moves to dismiss Liberty Mutual's claim and BMCC's cross-claim, alleging that the Sharkbite fitting was unreasonably

dangerous in construction or composition. RWC also moves to dismiss BMCC's cross-claim that the fitting failed to conform to an express warranty. At the pleading stage, the Court is mindful that requiring a plaintiff to plead "extremely detailed factual allegations to satisfy each element of a products liability action under the LPLA creates a situation where a manufacturer will not be held liable for defective products because it has sole possession of the necessary document to ultimately prove the claim." Flagg v. Stryker Corp., 647 Fed.Appx. 314, 317 (5th Cir. 2016). Nevertheless, RWC identifies deficiencies with these claims, which may fall short of the plausibility threshold for federal pleading standards.

1.  Construction/Composition Defect Theory

*a.*

As against pipe fitting manufacturer RWC, the plaintiff alleges that the Sharkbite coupling pipe fitting was designed, manufactured, and sold into the stream of commerce in a defective condition, which RWC knew or should have known could cause property damage. Paragraph 4(b) focuses on the construction/composition defect theory, which RWC challenges as implausible; the complete allegations are necessary for context:

4(a)

Reliance is a manufacturer, as defined by Louisiana Revised Statute 9:2800.53(1), because it is in the business of manufacturing a product for placement into commerce;

4(b)

Reliance's product (hereafter referred to as the "Sharkbite fitting") was unreasonably dangerous in construction and/or composition because, at the time that the fitting left Reliance's possession and control, it deviated in a material way from the manufacturer's specifications or performance standards;

4(c)

In addition to the Sharkbite fitting being defective in construction or composition, it was unreasonably dangerous in design. Specifically, the Sharkbite fitting was designed in a manner that the metallic composition allowed rapid corrosion and failure when exposed to water. At the time that the Sharkbite fitting left Reliance's control, there existed a safer alternative design and/or different choice of material that was capable of preventing the plaintiff's losses. The fitting's defective design was a proximate cause of the plaintiff's damage/loss[]; and

4(d)

The Sharkbite fitting was unreasonably dangerous because there was no warning that the fitting could not be installed in tension that exposure to chloride could cause it to prematurely fail or warning regarding insulating or wrapping the fitting with non-chlorine based insulation. The Sharkbite fitting was marketed as a fitting that was easy to install and would last indefinitely. The fitting's defective warning was a proximate cause of the plaintiff's losses/damages.

RWC contends that paragraph 4(b) offers only conclusory allegations devoid of facts as to how the Sharkbite fitting

11

deviated from RWC's manufacturing specifications or other identical products. When read with the other paragraphs of the complaint, Liberty Mutual counters that it sufficiently alleges that the metallic composition of the Sharkbite fitting was unreasonably dangerous in that it was made of a metal material that allowed for rapid corrosion and thus failure when exposed to water. Absent any allegations identifying a flaw in the manufacturing process, or how the particular product deviated from RWC's specifications or other identical products, RWC contends that Liberty Mutual's allegations and argument support only the plausibility of a design defect theory, not a construction composition defect theory. The Court agrees.

Liberty Mutual offers nothing more than a single conclusory allegation regarding the Sharkbite fitting's allegedly defective construction or composition. This is insufficient to state a plausible claim. See Pellegrin v. C.R. Bard, No. 17-12473, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018)(Vance, J.)(collecting cases granting motions to dismiss construction/composition claims where plaintiff failed to allege that the product deviated from production standards or identical products). Liberty Mutual's contention that its design defect allegation -- that the metal material used allowed for rapid corrosion when exposed to water -- suffices to state a plausible construction/composition defect

claim reveals a misapprehension of the distinction between the construction/composition and design defect theories of LPLA recovery. See Brocato v. DePuy Orthopaedics, Inc., No. 14-2607, 2015 WL 854150, at *4 (E.D. La. Feb. 25, 2015)(dismissing construction/composition theory of recovery, but denying motion to dismiss design defect theory of recovery, where the plaintiff failed to articulate how the particular bone cement used in her procedures either did not meet performance standards or that it deviated from the construction or composition of identical bone cements manufactured by the defendants). Liberty Mutual has failed to allege that the particular metal used at the ACE Hotel either did not meet cited performance specifications or that some manufacturing defect resulted in an anomalous composition of the particular fitting used when compared to other Sharkbite fittings manufactured by RWC. Because the plaintiff advances only a conclusory allegation in support of its defective construction or composition claim, this claim fails to pass the plausibility threshold required by Twombly and Iqbal and must be dismissed.

*b.*

RWC moves to dismiss BMCC's construction or composition defect claim for the same reasons it seeks dismissal of Liberty Mutual's virtually identical claim. In its cross-claim against

RWC, BMCC adopts the plaintiff's allegations against RWC and alleges, like Liberty Mutual:

42.

Pursuant to Louisiana Revised Statute 9:2800.53(1), RWC is a manufacturer by definition, because it is in the business of manufacturing a product for placement into trade or commerce.

43.

RWC manufactured plumbing fittings called Sharkbite Push-Fit Connection System ("Sharkbite fittings").

44.

The Sharkbite fittings were unreasonably dangerous in construction and/or composition because, at the time that the Sharkbite fittings left RWC's possession and control, the Sharkbite fittings deviated in a material way from RWC's specifications and/or performance standards. Specifically, the Sharkbite fittings' metallic composition was not in compliance with the specifications and/or industry standards. The Sharkbite fittings' improper metallic compound caused rapid corrosion and failure after it was installed. The alleged damages and losses were proximately caused because the Sharkbite fittings were unreasonably dangerous in construction and/or composition.

45.

The Sharkbite fittings were unreasonably dangerous in design at the time that the Sharkbite fittings left RWC's possession and control. Specifically, the Sharkbite fittings were designed in a manner that the metallic composition allowed rapid corrosion and failure when exposed to normal installation conditions. At the time that the Sharkbite fittings left RWC's control, there existed an alternative design for the Sharkbite fittings that was capable of preventing the alleged damages. The Sharkbite fittings' defective design was a proximate cause of any alleged damages or losses.

BMCC's construction/composition defect claim must be dismissed for the same reasons articulated above; in the same conclusory fashion as Liberty Mutual, BMCC alleges in conclusory fashion without supporting facts that the Sharkbite fittings deviated from RWC's specification or industry standards. And, like Liberty Mutual, BMCC advances the same design defect allegations in support of its attempt to state a plausible defective construction or composition claim. BMCC's conclusory allegations and its failure to articulate how the Sharkbite fittings deviated from production standards or how it deviated from the construction or composition of identical products warrants dismissal of its construction or composition defect claim. See Pelligrin, 2018 WL 3046570, at *4; see also Brocato, 2015 WL 854150, at *4.

2. Express Warranty Theory

RWC also moves to dismiss BMCC's cross-claim for breach of express warranty. BMCC alleges:

> 46.
> The Sharkbite fittings were unreasonably dangerous because there was no warning that the Sharkbite fittings' design would cause the alleged damage and losses. Specifically, RWC failed to warn Bernhard MCC that the Sharkbite fittings required any specific installation instructions. The Sharkbite fittings were marketed as fittings that were easy to install and that would last indefinitely. RWC's failure to warn or

defective warning was a proximate cause of any alleged damages or losses.

47.

The Sharkbite fittings were unreasonably dangerous because the Sharkbite fittings did not conform to an express warranty made by RWC about the product, which induced Bernhard MCC to use the Sharkbite fittings. Specifically, RWC was aware of the intended applications of the Sharkbite fittings at the CE Hotel, and RWC made an express warranty to Bernhard MCC that the intended applications at the ACE Hotel were approved by RWC. The alleged damages and losses were proximately caused because RWC's express warranty to Bernhard MCC was untrue.

48.

As a direct and proximate cause of the defective construction and/or composition, defective design, failure to warn, and/or the express warranty of RWC, Bernhard MCC removed and replaced all Sharkbite fittings at the ACE Hotel, incurring costs in the amount of $45,961, including labor and materials, plus interest.

RWC contends that BMCC fails to allege specific promises or representations allegedly made by RWC, that BMCC fails to allege any facts suggesting where a warranty originated, or who or how it was conveyed to BMCC, and that BMCC's allegations that the fittings were marketed as "easy to install and that would last indefinitely" are insufficient to plead a plausible claim for breach of express warranty. The Court agrees.

The LPLA defines "express warranty" as "a representation, statement of alleged fact or promise about a product...that

16

represents, affirms or promises that the product...possesses specified characteristics or qualities or will meet a specified level of performance. La.R.S. 9:2800.53(6)(adding that "general opinion[s]" or "general praise" of a product do not qualify as express warranties).

BMCC alleges, in conclusory fashion, that the Sharkbite fittings did not conform to an express warranty, which BMCC suggests was "that the intended applications at the ACE Hotel were approved by RWC" and that the fittings "were easy to install and would last indefinitely." These conclusory and generic allegations fail to specify the promise or representation made by RWC. BMCC alleges only that the fittings were marketed as "easy to install and...would last indefinitely." Like generic promises or opinions that a product is "safe and effective," these allegations fail to qualify as express warranties. See, e.g., Pelligrin, 2018 WL 3046570, at *5-6 (granting motion to dismiss breach of express warranty claim where the plaintiff failed to specify the content of the defendants' representations other than the plaintiff's vague suggestion that the defendants represented that the product was safe and free of "dangerous side effects."). Absent allegations suggesting what was guaranteed in relation to the claims of the failure of the pipe fitting, or some facts alleging how the express warranty induced BMCC to use the fittings,

BMCC's cross-claim based on breach of express warranty fails to state a plausible claim for relief.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the partial motions to dismiss are GRANTED. Liberty Mutual's claim for construction or composition defect is hereby dismissed and BMCC's cross-claims for construction or composition defect and breach of express warranty are likewise dismissed.[3]

New Orleans, Louisiana, April 10, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[3] Both Liberty Mutual and BMCC suggest that the Court should permit amendment to satisfy the pleading standards for any claims dismissed. Neither party offered an actual motion for leave accompanied by a proposed amended complaint (or proposed amended allegations for the claims challenged by RWC) to demonstrate that any such proposed amendment would not be futile.